UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOTH SUN,<br><br>        Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary, Department of Homeland Security; PAM BONDI, Attorney General; TODD LYONS, Executive Associate Director of ICE Enforcement and Removal Operations (ERO); GREGORY J. ARCHAMBEAULT, Director, San Diego Field Office, Immigration and Customs Enforcement; CHRISTOPHER J. LAROSE, Warden, Otay Mesa Detention Center.<br><br>        Respondents. | Case No.: 3:25-cv-02433-CAB-MMP<br><br>**ORDER:**<br>**1) GRANTING PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [Doc. No. 7]**<br>**2) TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |

  Pending before the Court is Petitioner's Ex Parte Application for Temporary Restraining Order ("TRO") and Order to Show Cause Re: Preliminary Injunction. [Doc.

No. 7.]¹ Petitioner argues that his planned re-detention on October 1, 2025 by Respondents will violate the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), 8 U.S.C. § 1231(a)(6), Due Process, and regulations requiring the government to show "on account of changed circumstances . . . that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." [Doc. No. 7 at 6; 8 C.F.R. § 241.13(i)(2).] Respondents filed an Opposition, [Doc. No. 8], and Petitioners filed a Reply. [Doc. No. 10.] For the following reasons, Petitioner's TRO application is **GRANTED**.

## I. BACKGROUND

Petitioner Thoth Sun is a native of Cambodia who came to the United States on May 29, 1979 at two years old. [Doc. No. 7 at 4.] Petitioner's status was later adjusted to that of a lawful permanent resident retroactive to that date. [Doc. No. 8 at 2.] On May 3, 2004, Petitioner was ordered removed to Cambodia because he was convicted in 1996 of voluntary manslaughter. [Doc. No. 7-1 at 20; Doc. No. 14-1 at 2.] Despite the removal order, Petitioner was ultimately released from immigration custody on an order of supervision "because Immigration and Naturalization Services (INS) was unable to obtain a travel document ['TD']." [Doc. No. 14-1 at 2.] Then in 2007, Petitioner was re-detained to effect his removal, but was again released on an order of supervision. [*Id.*] On September 12, 2025, Petitioner was re-detained to effect his removal to Cambodia. [*Id.* at 2-3.] Because Petitioner is a class member subject to the permanent injunction in *Chhoeun v. Marin*, 8:17-cv-01898-CJC (GJSx) (C.D. Cal. Apr. 27, 2020), Petitioner was required to receive at least 14 days' notice before re-detention, which he did not receive. Immigration and Customs Enforcement ("ICE") released Petitioner on September 17, 2025 and notified him that he would be taken into custody again on October 1, 2025. [Doc. No. 8 at 2.] Respondents assert that ICE is currently preparing a TD to submit to the Cambodian

---

¹ Document numbers and page references are to those assigned by CM/ECF for the docket entry.

embassy. [*Id.* at 3.] Respondents also assert that they are not "currently seeking to remove Petitioner to a third country." [*Id.*]

## II. LEGAL STANDARD

The legal standard for issuing a TRO is essentially identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). In the Ninth Circuit, "[a] party seeking a preliminary injunction must meet one of two variants of the same standard." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under the *Winter* standard, a party is entitled to a preliminary injunction if he demonstrates (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A party must make a showing on all four prongs. *See A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018).

Under the Ninth Circuit's "serious questions" test, "a sliding scale variant of the *Winter* test," a party is "entitled to a preliminary injunction if it demonstrates (1) serious questions going to the merits, (2) a likelihood of irreparable injury, (3) a balance of hardships that tips sharply towards the [petitioner], and (4) the injunction is in the public interest." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (internal quotation marks omitted). "[I]f a [petitioner] can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the [petitioner's] favor, and the other two *Winter* factors are satisfied." *All. for the Wild Rockies*, 865 F.3d at 1217 (internal quotation marks omitted).

## III. DISCUSSION

### A. Jurisdiction

Respondents argue that the Court lacks jurisdiction over Petitioner's claims under 8 U.S.C. § 1252. [Doc. No. 8 at 3.] The Supreme Court's holding in *Zadvydas* squarely

contradicts this argument. There, the Supreme Court rejected the application of § 1252 to limit judicial review of indefinite post-removal-period detentions under § 1231(a)(6) and held "that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas*, 533 U.S. at 687-88. This Court is thus satisfied of its subject matter jurisdiction and proceeds to the merits.

### B. *Winter* Factors

#### 1. Likelihood of Success on Claims Under 8 C.F.R. § 241.13(i)(2)

Petitioner asserts that he is likely to succeed on his claims that re-detention on October 1, 2025 by Respondents will violate ICE's regulations at 8 C.F.R. § 241.13(i)(2). [Doc. No. 7 at 6.] The Court agrees.

Once ICE releases a noncitizen on an Order of Supervision, ICE's ability to re-detain that noncitizen is governed by its own regulations. Relevant here, 8 C.F.R. § 241.13(i)(2) provides for "[r]evocation for removal" and allows revocation of release when "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." ICE's own regulations thus place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future. Moreover, § 241.13(i)(3) provides that "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release." The Court finds that Respondents have not shown that ICE complied with either of these requirements.

First, the record evidence of notice to the Petitioner is a four-paragraph September 17, 2025 letter. [Doc. No. 7-1 at 5.] This letter has no information about why Petitioner's release is being revoked or what circumstances have changed. A pro forma notice that gives no information on why release is being revoked, beyond simply that Petitioner "will be taken into custody for the purpose of removal from the United States[,]" is insufficient. *See Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *3 (D. Minn. Aug. 25, 2025).

Second, there are no facts or argument about what has changed since ICE's previous two failed attempts to remove Petitioner in the last two decades. The only argument Respondents now make for changed circumstances is that they are *preparing* to apply for the necessary documents to remove Petitioner to Cambodia. Respondents say they are "putting together a travel document [TD] request to send to [the] Cambodian embassy," [Doc. No. 14-1 at 3], and that "[o]nce ICE receives the TD, it will begin efforts to secure a flight itinerary for Petitioner." [Doc. No. 8 at 8.] The Court finds these kind of vague assertions—akin to promising the check is in the mail—insufficient to meet ICE's own requirement to show "changed circumstances" or "a significant likelihood that the alien may be removed in the reasonably foreseeable future."

Tellingly, when faced with similar threadbare evidence of changed circumstances, many of our sister courts have concluded that the government failed to meet its burden under 8 C.F.R. § 241.13(i)(2). *See, e.g.*, *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."); *Nguyen v. Hyde*, No. 25-CV-11470-MJJ, 2025 WL 1725791, at *4 (D. Mass. June 20, 2025) (finding insufficient the government's assertions that they are processing a travel document because they "have not identified what concrete steps ICE has taken to process" the document nor whether the request was submitted to the removal country); *Roble*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (finding insufficient the government's assertion that ICE "requested third country removal assistance from [Enforcement and Removal Operations] HQ." (alteration in original)).

Furthermore, nothing in the record tells the Court about how ICE has "consider[ed] all the facts of the case including . . . the history of the alien's efforts to comply with the order of removal . . . and the alien's assistance with [ICE's removal] efforts[.]" 8 C.F.R. § 241.13(f). Respondents do not contest Petitioner's assertions that he has "been in compliance with the conditions of his release and has not been in violation of criminal

laws" since his initial release following his final order of removal in 2004. [Doc. No. 7 at 4.] Petitioner also declares, and Respondent does not contest, that he is employed in San Diego, where he resides with his wife of over 15 years and his 14-year-old daughter. [Doc. No. 7-1 at 20.] Nor do Respondents provide any facts or arguments to demonstrate that unless Petitioner is re-detained, he is unwilling or unable to provide the information needed for Respondents to pursue Petitioner's removal. Respondents similarly do not provide any facts or argument that when Respondents are able to secure the necessary documentation to effect Petitioner's removal to Cambodia, that Petitioner will not comply.

Because the Government plainly fails to meet its own regulations by determining that, "on account of changed circumstances . . . there is a significant likelihood that [Petitioner] may be removed in the reasonably foreseeable future," the Court finds Petitioner is likely to succeed on his claim that ICE was not entitled to revoke Petitioner's Order of Supervision under 8 C.F.R. § 241.13(i)(2). We need not and do not analyze Petitioner's remaining theories. *See Ozkay v. Equity Wave Lending, Inc.*, 2020 WL 12764953, at *2 (N.D. Cal. Nov. 25, 2020).

### a. Irreparable Harm

Under the second *Winter* factor, the Court considers whether Petitioner is "likely to suffer irreparable harm in the absence of [injunctive] relief." *Winter*, 555 U.S. at 20. Petitioner argues that "'[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty' that the Fifth Amendment Due Process Clause protects." [Doc. No. 7 at 10 (quoting *Zadvydas*, 533 U.S. at 690).] Respondents do not contest this argument; instead, Respondents argue that Petitioner's alleged irreparable harm is a mere "possibility" and not an "immediate threatened injury," as required. [Doc. No. 8 at 9.]

There is no dispute that, absent the Court's intervention, Petitioner will be detained on October 1, 2025. Given the Court's finding that Petitioner is likely to succeed on at least one of his claims, Plaintiffs have established an immediate threatened injury in the form of unlawful detention. Therefore, the second *Winter* factor favors Petitioner.

### b. Balance of Equities and Public Interest

When the government is an involved party, the third and fourth *Winter* factors—the balance of the equities and the public interest—merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Petitioner claims that these two factors weigh in his favor because federal law has been violated. [Doc. No. 7 at 11.] Respondents point to the public's interest in enforcement of the United States' immigration laws. [Doc. No. 8 at 10.]

"[I]t would not be equitable or in the public's interest to allow . . . [violation of] the requirements of federal law, especially when there are no adequate remedies available." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Valle Del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)). "On the contrary, the public interest and the balance of the equities favor 'prevent[ing] the violation of a party's constitutional rights." *Id.* (alteration in original) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Moreover, Respondents recognize that "[u]ltimately the balance of the relative equities 'may depend to a large extent upon the determination of the [movant's] prospects of success,'" [Doc. No. 8 at 10 (alterations in Respondent's brief) (quoting *Tiznado-Reyna v. Kane*, Case No. CV 12-1159-PHX-SRB (SPL), 2012 WL 12882387, at *4 (D. Ariz. Dec. 13, 2012))], and here the Court found Petitioner has a likelihood of success on at least one claim. Accordingly, the Court finds that the third and fourth *Winter* factors support injunctive relief.

### C. Bond

A court "may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks omitted) (emphasis in original). If there is no realistic likelihood of harm to the defendant from

enjoining the disputed conduct, "the district court may dispense with the filing of a bond[.]" *Id.* Given that Respondent has not argued that complying with the TRO will be costly, [*see* Doc. No. 8 at 9-10], the Court **DECLINES** to set bond.

## IV. CONCLUSION

Based on the foregoing, Petitioner's TRO application is **GRANTED,** and **IT IS FURTHER ORDERED** that:

1. Respondents shall not re-detain Petitioner for a period of 14 days from entry of this Order.

2. Respondents shall ensure the return of Petitioner's employment authorization document and driver's license within 5 days of this Order.

3. Respondents are hereby **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue. Respondents shall file any response to the Order to Show Cause on or before **October 3, 2025**, and Petitioner shall file any reply on or before **October 7, 2025**. The Court will hear argument on whether a preliminary injunction should issue on **October 10, 2025 at 2 PM PST** in Courtroom 15A.

**IT IS SO ORDERED.**

Dated: September 30, 2025

Hon. Cathy Ann Bencivengo
United States District Judge